OPINION
In this accelerated calendar case, appellant, Dworken 
Bernstein Co., L.P.A. ("Dworken Bernstein" or "law firm"), appeals from a decision of the Painesville Municipal Court upholding the constitutionality of Section 1135.02(d) of the Codified Ordinances of the City of Painesville ("Section 1135.02(d)") that attempted to limit the number of days before an election that political signs may be placed on property. Appellee, the City of Painesville Building Department (the "City" or "appellee"), has not filed an appellate brief and is otherwise not participating in this appeal. For the reasons that follow, we reverse the judgment of the trial court.
The facts pertinent to this appeal are as follows. On October 15, 1997, a complaint was filed in the Painesville Municipal Court by a building inspector for the City alleging that "Mr. Dworken's (of Dworken [] Bernstein) office was notified on October 7th, [1997] that their sign was posted in violation ofPlanning and Zoning Section 1135.02(d), * * *." (Emphasis sic.) It is apparent that the law firm was accused of violating a provision in the ordinance that restricted property owners from placing political signs on their property prior to seventeen days before an election. Section 1135.02(d) provides, in its entirety, as follows:
"Political Advertising Signs.
 "(1) A political sign shall be any sign concerning any candidate, political party, issue, levy, referendum, or other matter whatsoever eligible to be voted upon in any general, primary, or special election; or any sign advocating any type of political action.
 "(2) For a period of (sic) not to exceed seventeen (17) days preceding any primary, general election or special election there may be placed on property, with the owner's consent, political advertising signs which shall carry a complete message and shall not exceed sixteen square feet in area. The signs may be double face. Such sign shall not be nearer than five feet to the street line or any boundary line, provided, however, that on a corner property, if the top of such sign is in excess of three feet above the curb grade, then it must be twenty feet or more from the intersection of the street lines.
 "(3) A permit shall be required for the placement and use of political advertising signs by each candidate or each campaign supporting an issue. A fee as setforth (sic)
in Chapter 1149 [consisting of $25] shall be paid.
 "(4) Within forty-eight hours after the election, preceding which a sign has been displayed, the owner of the property on which the sign is located, or his agent, shall cause the sign to be removed."
 The complaint of October 15, 1997, further asserted that "Mr. Dworken's office was queried on October 9th, [1997], as to why the sign was not removed, and [the complainant] was informed that the representatives of Dworken [] Bernstein did not want the political sign removed." The complaint noted that this offense constituted a misdemeanor of the fourth degree, a separate offense being committed upon "each and every day during which the violation continues." To the above charges, David M. Dworken, the defendant in the original complaint filed in this matter, entered a plea of not guilty.
On January 28, 1998, Mr. Dworken filed a motion to dismiss the complaint alleging that Section 1135.02(d) unconstitutionally infringed upon his rights to freedom of speech under Article I, Section 11 of the Ohio Constitution and the First Amendment to the United States Constitution. Specifically, Mr. Dworken alleged that the regulation effectively banned the use of political signs except for a limited number of days before an election and that such restrictions did not apply to other temporary signs such as "For Sale" or small announcement signs. Thus, Mr. Dworken argued that Section 1135.02(d) was unconstitutional because it was a content-based regulation that attempted to curtail an individual's right to unfettered political speech.
Appellee did not dispute that political signs were treated differently than other signage. However, appellee responded to Mr. Dworken's arguments by asserting that Section 1135.02(d) was content neutral as it treated all political speech, regardless of the message conveyed, equally. Appellee asserted that political signs "spring up like weeds" during election time and that their flimsy construction were "hardly conducive to the weather patterns of the Cleveland-area as the winter months approach." In addition to these aesthetic concerns, appellee also raised questions as to traffic safety because of the fact that the signs were designed to divert a motorist's attention from the roadway.
Appellee further questioned the value of the "speech" attributed to political signs as they "do not contain policy statements by the candidate or factual material relating to a ballot issue." Appellee asserted that political signs were used solely to create name recognition and suggested that materials regarding the issues were "more properly addressed through handbilling, leafleting, and the like." Thus, appellee argued that the City of Painesville was within its right to enact a content neutral ordinance that did not ban all political speech, but rather, attempted only to regulate the time, place, and manner in which the signs were displayed. Even if the court determined that Section 1135.02(d) was a content based regulation, appellee further asserted that the City of Painesville had compelling reasons to restrict the use of political signs to the seventeen-day period prior to an election.
By judgment entry filed June 2, 1998, the trial court denied Mr. Dworken's motion to dismiss. Thereafter, on June 15, 1998, an amended complaint was filed to reflect that the proper defendant of this action was the law firm of Dworken Bernstein and not Mr. Dworken individually. A representative of the law firm entered a plea of not guilty to the amended complaint and the parties renewed their prior arguments regarding the constitutionality of Section 1135.02(d). On July 15, 1998, the trial court denied the law firm's motion to dismiss and Dworken Bernstein subsequently changed its initial plea of not guilty to no contest. On September 16, 1998, the law firm was found guilty and fined $250 plus costs. From this judgment, Dworken Bernstein filed a timely notice of appeal and, in its sole assignment of error, alleges that that trial court erred in not declaring Section 1135.02(d) unconstitutional.
Before addressing Dworken Bernstein's assigned error, we note that the sole issue before this court is the constitutionality of Section 1135.02(d) with respect to the ban of political signs outside of the seventeen-day period prior to any election. The violation of this seventeen-day provision was the sole basis for the complaint filed against the law firm and we do not reach the constitutionality of the remaining portions of the regulation.
The First Amendment to the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of speech * * *." Similarly, Article I, Section 11 of the Ohio Constitution states that "[e]very citizen may freely speak * * * on all subjects, * * * and no law shall be passed to restrain or abridge the liberty of speech, * * *."
In the present case, the City of Painesville has enacted a year-round ban on a form of political speech that it then permits for a limited period of time around an election. The United States Supreme Court has afforded the highest protection under theFirst amendment to political speech in order "`to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" McIntyre v.Ohio Elections Comm. (1995), 514 U.S. 334, 346, quoting Roth v.United States (1957), 354 U.S. 476, 484; See, also, Burson v.Freeman (1992), 504 U.S. 191, 196. This highest level of protection extends to political signs as the Supreme Court recognized in City of Ladue v. Gilleo (1994), 512 U.S. 43.
 "[The City] has almost completely foreclosed a venerable means of communication that is both unique and important. It has totally foreclosed that medium to political, religious, or personal messages. Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community.
 "Often placed on lawns or in windows, residential signs play an important part in political campaigns, during which they are displayed to signal the resident's support for particular candidates, parties, or causes. They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression. * * *
 "Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute. * * * Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating and not participating in some public debate. Furthermore, a person who puts up a sign at her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means.
 "A special respect for individual liberty in the home has long been part of our culture and our law * * *; that principle has special resonance when the government seeks to constrain a person's ability to speak there. * * *." (Emphasis sic and citations omitted.) Id. at 54-55, 57-58.
 As political speech is at the core of the constitutional protections this country provides its citizenry, a law attempting to restrict such speech must pass "exacting scrutiny." McIntyre at 347. Consequently, Section 1135.02(d) will only be upheld if the legislation is narrowly tailored to serve an overriding state interest. Id.
At the onset of our analysis regarding the constitutionality of Section 1135.02(d), we must seriously question the state's "overriding interest" in this matter given the fact that the City of Painesville declined to file an appellate brief. This failure to file a brief would support a decision by this court to accept Dworken Bernstein's statement of facts and issues as correct and reverse the trial court's judgment if the law firm's brief would reasonably support such an action. See App.R. 18(C). However, given the constitutional magnitude of this issue, we will briefly address the arguments appellee made in support of the constitutionality of Section 1135.02(d) in its response to Dworken Bernstein's motion to dismiss filed at the trial court level.
First, appellee argued before the trial court that Section 1135.02(d) could only be subjected to an intermediate standard of review, not strict scrutiny, because the City of Painesville merely attempted to enact legislation as to the "time, place, or manner" that political signs could be placed on property. Appellee correctly noted that the Supreme Court of the United States has recognized that a government may place reasonable time, place, or manner restrictions on protected speech provided that the restrictions meet the following: 1.) the restrictions are content neutral; 2.) they are narrowly tailored to serve a significant governmental interest that would be achieved less effectively absent the regulation; and 3.) ample alternative channels for communication are left open. Ward v. Rock AgainstRacism (1989), 491 U.S. 781, 791.
Appellee asserted that the rigorous standard of review granted to political speech should not be applied to the time restriction set forth in Section 1135.02(d) based on the standard set forth for time, place or manner restrictions. We reject appellee's argument that Section 1135.02(d) was a simple time, place or manner regulation. It is undisputed that the seventeen-day restriction enacted by the City of Painesville to political signs does not apply to other signage within the city including real estate or small announcement signs. While appellee argued that Section 1135.02(d) was not "content" based because the legislation applied equally to all political signs regardless of the content or view expressed therein, the United States Supreme Court has held that the "First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." Burson v. Freeman (1992),504 U.S. 191, 197; See, also, Boos v. Barry (1988), 485 U.S. 312, 319.
In this case, Section 1135.02(d) banned the use of political signs, an important and oftentimes indispensable means of communication, except for a limited window of time in which the ban was temporarily lifted. Such a restriction, which singles out political signs from which to ban an entire mode of communication, is subject to the strictest standard of review as set forth inMcIntyre, supra.
Second, appellee argued before the trial court that even if the intermediate standard of review did not apply, Section 1135.02(d) would pass constitutional muster under strict scrutiny. However, it is apparent from a review of the record that appellee made absolutely no attempt to meet its burden under the standard of strict scrutiny other than allege concerns regarding aesthetics and traffic safety. These "concerns" are insufficient to meet appellee's burden as the United States Supreme Court stated inUnited States v. Natl. Treasury Employees Union (1995),513 U.S. 454, 475:
 "`When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more that simply "posit the existence of the disease sought to be cured." * * * It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." Turner Broadcasting System, 512 US, at 664. * * * * As Justice Brandeis reminded us, a `reasonable' burden on expression requires a justification far stronger than mere speculation about serious harms. `Fear of serious injury cannot alone justify suppression of free speech and assembly. Men feared witches and burnt women * * *. To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced.' Whitney v. California, 274 U.S. 357, 376, * * * (1927) (concurring opinion)." (Parallel citations omitted.)
Appellee made no attempt to demonstrate the "disease sought to be cured" other than posit concerns over aesthetics and traffic safety. Moreover, there was absolutely no demonstration that Section 1135.02(d) was the least restrictive means to combat these perceived problems. Under these circumstances, appellee has failed to meet its burden to establish that Section 1135.02(d) was a reasonable response to the harm caused by the use of political signs. Appellant's first assignment of error has merit.
Based on the foregoing, the judgment of the trial court is reversed and the seventeen-day limitation provision of Section 1135.02(d) for which the law firm was charged with violating is declared unconstitutional.
 ________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J.,
COX, J., (Edward),
Seventh Appellate District, sitting by assignment,
concur.